**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SPIN MASTER LTD., a Canadian corporation and SPIN MASTER, INC., a Delaware corporation,<br><br>    Plaintiffs,<br><br>v.<br><br>[REDACTED] and [REDACTED],<br><br>    Defendants. | Case No. 20-cv-06135<br><br>**Judge Steven C. Seeger**<br><br>**Magistrate Judge M. David Weisman** |

**AMENDED COMPLAINT**

Plaintiffs Spin Master Ltd. and Spin Master, Inc. (collectively, "Spin Master" or "Plaintiffs") hereby bring the present action against [REDACTED] and [REDACTED], identified on Schedule A attached hereto (collectively, "Defendants") and allege as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act, 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States

---

[1] The e-commerce store urls are listed on Schedule A hereto under the Online Marketplaces.

consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of Spin Master's trademarks, unauthorized copies of Spin Master's federally registered copyrighted designs, or both to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Spin Master substantial injury in the State of Illinois.

## II. INTRODUCTION

3.      This action has been filed by Spin Master to combat e-commerce store operators who trade upon Spin Master's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of Spin Master's federally registered trademarks, unauthorized copies of Spin Master's federally registered copyrighted designs, or both (collectively, the "Unauthorized PAW Patrol Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Unauthorized PAW Patrol Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Spin Master is forced to file this action to combat Defendants' counterfeiting of its registered trademarks and infringement of its registered copyrighted designs, as well as to protect unknowing consumers from purchasing Unauthorized PAW Patrol Products over the Internet. Spin Master has been and continues to be irreparably damaged through consumer confusion,

dilution, and tarnishment of its valuable trademarks and infringement of its copyrighted designs as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiffs**

4.      Plaintiff Spin Master Ltd. is a Canadian corporation with its principal place of business at 450 Front Street West, Toronto, Ontario, Canada.

5.      Plaintiff Spin Master, Inc. is a Delaware corporation with its principal place of business at 11858 La Grange Ave., Suite C, Los Angeles, California 90025.  Spin Master, Inc. is Spin Master Ltd.'s subsidiary and exclusive licensee in the United States.

6.      Spin Master is a leading global children's entertainment company that creates, designs, manufactures and markets a diversified portfolio of innovative toys, games, products and entertainment properties. Since 2005, Spin Master has received 64 Toy Industry Association (TIA) Toy of The Year (TOTY) nominations with 18 wins across a variety of product categories. Spin Master has been recognized with 12 TOTY nominations for Innovative Toy of the Year, more than any of its competitors. Spin Master is among a limited number of companies that not only develop and produce global entertainment properties, characters and content, but also monetize that content through the creation, sale and licensing of products.

7.      One of the categories of toys widely associated with Spin Master is PAW Patrol, a line of toys (collectively referred to herein as "PAW Patrol Products") based on the hit animated pre-school television series of the same name that has aired on Nickelodeon in the United States since August 2013 and has been sold to television networks in over 160 countries around the world.

8.    PAW Patrol toy sales have generated millions of dollars in revenue for Spin Master and increased Spin Master's presence in the preschool toy market.  In fact, PAW Patrol has since become one of Spin Master's most profitable brands. Analysts for the National Bank of Canada reported that toys and games based on the show accounted for approximately $245 million U.S. (or 25 percent) of Spin Master's gross product sales for 2015.

9.    PAW Patrol Products have become enormously popular and even iconic, driven by the brand's arduous quality standards and innovative design.  Among the purchasing public, genuine PAW Patrol Products are instantly recognizable as such.  The PAW Patrol brand has become a global success that resonates with children worldwide, and PAW Patrol Products are among the most recognizable in the world.  PAW Patrol Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois such as Target, Toys "R" Us, and Wal-Mart, and through the official pawpatrol.com website, which was launched in 2011 and began e-commerce sales in 2014.

10.    Spin Master began using the PAW PATROL trademarks in 2014 and has continuously sold products under the PAW PATROL and other trademarks (collectively, the "PAW PATROL Trademarks").  As a result of this long-standing use, strong common law trademark rights have amassed in the PAW PATROL Trademarks.  Spin Master's use of the marks has also built substantial goodwill in and to the PAW PATROL Trademarks.  The PAW PATROL Trademarks are famous marks and valuable assets of Spin Master.  PAW Patrol Products typically include at least one of the registered PAW PATROL Trademarks and/or various copyrighted designs (the "PAW Patrol Copyrighted Designs").

11.    Several of the PAW PATROL Trademarks are registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

4

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 4,848,752 | PAW PATROL | For: Computer software for authoring, downloading, transmitting, receiving, editing, extracting, encoding, decoding, displaying, storing and organizing text, graphics, images, audio files, video files, electronic games and electronic publications; computer software for use in searching, reviewing, purchasing and downloading electronic games and electronic publications; computer software applications for use in downloading, playing and reviewing audio, text and other digital content in the field of children's entertainment; computer game discs, computer game cartridges; pre-recorded audio and visual videos, CDs, tapes and DVDs featuring fictional characters and activities for children, movies in the field of children's entertainment, television programs in the field of children's entertainment, books in the field of children's entertainment, music and instructions for use of toys in class 009. <br><br> For: Umbrellas; luggage tags; tote bags; carry-all bags; backpacks; rucksacks; school bags; fanny packs; messenger bags; handbags; wallets and purses; athletic bags; travel bags; knapsacks; change purses; duffle bags; beach bags in class 018. <br><br> For: Clothing, namely, children's clothing in the nature of shorts, t-shirts, sweaters, dresses, skirts and pants, play clothing, namely, costumes for use in children's dress up play, loungewear, sleepwear and undergarments; footwear, namely, children's footwear; headgear, namely, hats, caps, head bands and earmuffs in class 025. |

| 4,675,681 | PAW PATROL | For: Paper, cardboard and goods made from these materials, namely, paper goodie bags, cardboard boxes, notebooks, sketchbooks, drawing paper, craft paper, wrapping paper and decorative paper; printed matter, namely, photographs, calendars, diaries, colouring books and sticker books; books and publications, namely, books, magazines and comic books featuring animation; arts and crafts kits, namely, arts and crafts paint kits and paint sold therewith; children's arts and crafts paper kits and accessories therefor, namely, stickers and marking stamps, fabric and wax sheets with die cut shapes and form molds for creating and decorating; arts and crafts kits containing pens, pencils, crayons, markers, notebooks and sketchbooks, wrapping paper, decorative paper, stickers, glue, tape, stencils, paint brushes, drawing templates and rulers in class 016. |
| --- | --- | --- |
| 4,614,743 | PAW PATROL | For: Toys, games and playthings, namely, dolls and accessories therefor, action figures, action figure play sets, character figures and toy animal figures, character figure and toy animal figure play sets, toy figurines, toy pets and accessories therefor, plush toys, toy vehicles, children's multiple activity toys, children's multiple activity toys featuring interactive activities and digital applications, toy building sets, educational toys, ride-on toys, construction toys, parlour games, puzzles, role-playing games, card games, board games, interactive board games, action skill games, action target games, electronic hand-held games for use with external display screen or monitor and electronic action toys in class 028.<br><br>For: Entertainment services in the nature of on-going television programs in the field of children's entertainment; entertainment, namely, |

| | | |
|---|---|---|
| | | a continuing animated television show broadcast over television, satellite, audio, and video media; entertainment services, namely, providing radio programs in the field of children's entertainment; entertainment services, namely, providing on-going television programs in the field of children's entertainment via a global computer network; entertainment services, namely, providing podcasts in the field of children's entertainment; entertainment services, namely, providing webcasts in the field of children's entertainment; entertainment services, namely, providing on-line computer games; entertainment services, namely, providing video podcasts in the field of children's entertainment; entertainment services, namely, providing temporary use of non-downloadable interactive games; entertainment services, namely, providing temporary use of non-downloadable electronic games; entertainment services, namely, providing temporary use of non-downloadable computer games; entertainment services, namely, providing temporary use of non-downloadable video games and distribution thereof in class 041 |
| 5,087,871 | TRACKER | For: Dolls; Plastic character toys; Play figures; Playsets for toy figures; Rubber character toys; Toy animals and accessories therefor; Toy figures in class 028. |
| 4,932,184 | EVEREST | For: Dolls; Plastic character toys; Play figures; Playsets for toy figures; Plush toys; Rubber character toys; Toy animals and accessories therefor; Toy figures in class 028. |
| 4,792,695 | ZUMA | For: toys, games and playthings, namely, dolls, toy animals, plush animals, and accessories for all the foregoing in class 028. |

| 4,779,749 | SKYE | For: Toys, games, and playthings, namely, dolls, toy animals, plush animals, character figures and character figure play sets, toy figurines, and accessories for all the foregoing in class 028. |
|---|---|---|
| 4,779,748 | ROCKY | For: toys, game and playthings, namely, dolls, toy animals, plush animals, and accessories for all the foregoing; all the foregoing relating to an animated television series, and not relating to the sport of boxing, or a movie or character relating to the sport of boxing in class 028. |
| 4,779,747 | CHASE | For: Toys, games and playthings, namely, dolls, toy animals, plush animals, character figures and character figure play sets, toy figurines, and accessories for all the foregoing in class 028. |
| 4,779,746 | MARSHALL | For: Toys, games, and playthings, namely, dolls, toy animals, plush animals, character figures and character figure play sets, toy figurines, and accessories for all the foregoing in class 028. |
| 4,779,745 | RUBBLE | For: Toys, games, and playthings, namely, dolls, toy animals, plush animals, character figures and character figure play sets, toy figurines, and accessories for all the foregoing in class 028. |
| 4,601,882 | RYDER | For: Toys, games and playthings, namely, dolls and accessories therefor, character figures and character figure play sets, toy figurines in class 028.<br><br>For: Entertainment services in the nature of on-going television programs in the field of children's entertainment; entertainment, namely, a continuing animated television show broadcast over television, satellite, audio, and video media; entertainment services, namely, providing radio programs in the field of children's entertainment; entertainment services, namely, providing on- |

| | | |
|---|---|---|
| | | going television programs in the field of children's entertainment via a global computer network; entertainment services, namely, providing podcasts in the field of children's entertainment; entertainment services, namely, providing webcasts in the field of children's entertainment; entertainment services, namely, providing on-line computer games; entertainment services, namely, providing video podcasts in the field of children's entertainment; entertainment services, namely, providing temporary use of non-downloadable interactive games; entertainment services, namely, providing temporary use of non-downloadable electronic games; entertainment services, namely, providing temporary use of non-downloadable computer games; entertainment services, namely, providing temporary use of non-downloadable video games and distribution thereof in class 041. |
| 5,218,798 |  | For: Computer software for authoring, downloading, transmitting, receiving, editing, extracting, encoding, decoding, displaying, storing and organizing text, graphics, images, audio files, video files, electronic games and electronic publications; computer software for use in searching, reviewing, purchasing and downloading electronic games and electronic publications; computer software applications for use in downloading, playing and reviewing audio, text and other digital content in the field of children's entertainment; computer software, namely, apps for mobile phones, smart phones, computers and tablets featuring interactive video games; computer game software; computer game discs, computer game cartridges; pre-recorded audiotapes, videotapes, CDs, and DVDs featuring movies and television programs about fictional characters, educational activities |

for children, audio books for children about fictional characters, music and instructions for use of toys in class 009.

For: Paper, cardboard and goods made from these materials, namely, paper goodie bags, cardboard boxes, notebooks, sketchbooks, drawing paper, craft paper, wrapping paper and decorative paper; printed matter, namely, photographs, calendars, diaries, coloring books and sticker books; stationery; books and publications, namely, books, magazines and comic books featuring animation; arts and crafts kits, namely, arts and crafts paint kits and paint sold therewith; children's arts and crafts paper kits and accessories therefor, namely, stickers and marking stamps, fabric and wax sheets with die cut shapes and form molds for creating and decorating; arts and crafts kits containing pens, pencils, crayons, markers, notebooks and sketchbooks, wrapping paper, decorative paper, stickers, glue, tape, stencils, paint brushes, drawing templates and rulers in class 016.

For: Umbrellas; luggage tags; tote bags; carry-all bags; lunch bags of nylon and canvas; backpacks; rucksacks; school bags; fanny packs; messenger bags; handbags; wallets and purses; athletic bags; travel bags; knapsacks; change purses; duffle bags; beach bags in class 018.

For: Clothing, namely, children's clothing in the nature of shorts, t-shirts, sweaters, dresses, skirts and pants, play clothing, namely, costumes for use in children's dress up play, loungewear, sleepwear and undergarments; footwear, namely, children's footwear; headgear, namely, hats, caps, head bands and earmuffs in class 025.

For: Toys, games and playthings, namely, dolls

|  |  | and accessories therefor, action figures, action figure play sets, character figures and toy animal figures, character figure and toy animal figure play sets, toy figurines, toy pets and accessories therefor, plush toys, toy vehicles, children's multiple activity toys, children's multiple activity toys featuring interactive activities and digital applications, toy building sets, educational toys, ride-on toys, construction toys, parlour games, puzzles, role-playing games, card games, board games, interactive board games, action skill games, action target games, electronic hand-held games for use with external display screen or monitor and electronic action toys in class 028.<br><br>For: Entertainment services in the nature of on-going television programs in the field of children's entertainment; entertainment, namely, a continuing animated television show broadcast over television, satellite, audio, and video media; entertainment services, namely, providing radio programs in the field of children's entertainment; entertainment services, namely, providing on-going television programs in the field of children's entertainment via a global computer network; entertainment services, namely, providing podcasts in the field of children's entertainment; entertainment services, namely, providing webcasts in the field of children's entertainment; entertainment services, namely, providing on-line computer games; entertainment services, namely, providing video podcasts in the field of children's entertainment; entertainment services, namely, providing temporary use of non-downloadable interactive games; entertainment services, namely, providing temporary use of non-downloadable electronic games; entertainment services, namely, providing temporary use of non- |

| | | downloadable computer games; entertainment services, namely, providing temporary use of non-downloadable video games and distribution thereof in class 041. |
|---|---|---|

12.     The above U.S. registrations for the PAW PATROL Trademarks are valid, subsisting, and in full force and effect.  The registrations for the PAW PATROL Trademarks constitute *prima facie* evidence of their validity and of Spin Master's exclusive right to use the PAW PATROL Trademarks pursuant to 15 U.S.C. § 1057 (b).  True and correct copies of the United States Registration Certificates for the above-listed PAW PATROL Trademarks are attached hereto as **Exhibit 1**.

13.     The PAW PATROL Trademarks are distinctive when applied to the PAW Patrol Products, signifying to the purchaser that the products come from Spin Master and are manufactured to Spin Master's quality standards.  Whether Spin Master manufactures the products itself or contracts with others to do so, Spin Master has ensured that products bearing the PAW PATROL Trademarks are manufactured to the highest quality standards.

14.     The PAW PATROL Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been continuously used and never abandoned. The innovative marketing and product designs of the PAW Patrol Products have enabled the PAW Patrol brand to achieve widespread recognition and fame and have made the PAW PATROL Trademarks some of the most well-known marks in the toy and children's entertainment industries.  The widespread fame, outstanding reputation, and significant goodwill associated with the PAW Patrol brand have made the PAW PATROL Trademarks valuable assets of Spin Master.

15.     Spin Master has expended substantial time, money, and other resources in advertising and promoting the PAW PATROL Trademarks.  In fact, Spin Master has expended millions of dollars in advertising, promoting and marketing featuring the PAW PATROL

Trademarks. PAW Patrol Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs. As a result, products bearing the PAW PATROL Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Spin Master. PAW Patrol Products have become among the most popular of their kind in the U.S. and the world. The PAW PATROL Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks. *Id.* As such, the goodwill associated with the PAW PATROL Trademarks is of incalculable and inestimable value to Spin Master.

16.     Genuine PAW Patrol Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the PAW Patrol brand.

17.     Since at least as early as 2014, genuine PAW Patrol Products have been promoted and sold at the official pawpatrol.com website. Sales of PAW Patrol Products via the pawpatrol.com website are significant. The pawpatrol.com website features proprietary content, images and designs exclusive to the PAW Patrol brand.

18.     Spin Master has registered its PAW Patrol Copyrighted Designs with the United States Copyright Office. The registrations include, but are not limited to: "Paw Patrol Toys Chase and Police Car 1.0" (U.S. Copyright Registration No. VA 1-967-964), issued by the Register of Copyrights on June 15, 2015; "Paw Patrol Toys Everest and Snowmobile 1.0" (U.S. Copyright Registration No. VAu 1-217-618), issued by the Register of Copyrights on June 16, 2015; "Paw Patrol Toys Marshall and Firetruck 1.0" (U.S. Copyright Registration No. VA 1-967-980), issued by the Register of Copyrights on June 15, 2015; "PAW PATROL LOGO ART 1.0" (U.S. Copyright Registration No. VA 1-912-869), issued by the Register of Copyrights on May 30, 2014; "Paw Patrol Toys Packaging Artwork 1.0" (U.S. Copyright Registration No. VA

1-999-428), issued by the Register of Copyrights on November 5, 2015; "Paw Patrol Tracker & Vehicle" (U.S. Copyright Registration No. VAu 1-294-879), issued by the Register of Copyrights on September 14, 2017; "Paw Patrol Toys Rocky and Garbage Truck 1.0" (U.S. Copyright Registration No. VA 1-967-970), issued by the Register of Copyrights on June 15, 2015; "Paw Patrol Toys Rubble and Mover Truck 1.0" (U.S. Copyright Registration No. VA 1-968-054), issued by the Register of Copyrights on June 15, 2015; "Paw Patrol Toys Ryder and ATV 1.0" (U.S. Copyright Registration No. VA 1-967-973), issued by the Register of Copyrights on June 15, 2015; "Paw Patrol Toys Skye and Helicopter 1.0" (U.S. Copyright Registration No. VA 1-967-971), issued by the Register of Copyrights on June 15, 2015; "Paw Patrol Toys Zuma and Hovercraft 1.0" (U.S. Copyright Registration No. VA 1-968-053), issued by the Register of Copyrights on June 15, 2015. True and correct copies of the U.S. federal copyright registration certificates for the above-referenced PAW Patrol Copyrighted Designs are attached hereto as **Exhibit 2**.

19.     Among the exclusive rights granted to Spin Master under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the PAW Patrol Copyrighted Designs to the public.

**The Defendants**

20.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Spin Master. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or

14

similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

21.    On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Spin Master to discover Defendants' true identities and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Spin Master will take appropriate steps to amend the Amended Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

22.    The success of the PAW Patrol brand has resulted in its significant counterfeiting. Consequently, Spin Master has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Spin Master has identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Unauthorized PAW Patrol Products to consumers in this Judicial District and throughout the United States. E-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. **Exhibit 3**, Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id*. Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id*. Counterfeit and pirated products account for billions in economic losses,

resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

23.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 5** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.   Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.  **Exhibit 5** at p. 22.  Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.  **Exhibit 5** at p. 39.  Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 4** at 186-187.

24.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Unauthorized PAW Patrol Products to residents of Illinois.

25.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies.  For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores or wholesalers.  E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union and/or PayPal.  E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer.  Spin Master has not licensed or authorized Defendants to use any of the PAW PATROL Trademarks or copy the PAW Patrol Copyrighted Designs, and none of the Defendants are authorized retailers of genuine PAW Patrol Products.

26.     Many Defendants also deceive unknowing consumers by using the PAW PATROL Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for PAW Patrol Products.  Other e-commerce stores operating under the Seller Aliases omit using PAW PATROL Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for PAW Patrol Products.

27.     On information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms.   On information and belief, certain Defendants have anonymously registered and maintained Seller Aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

28.     On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized PAW Patrol Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

29.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other seller aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features, such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, illegitimate search engine optimization (SEO), advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized PAW Patrol Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Unauthorized PAW Patrol Products were manufactured by and come from a common source and that Defendants are interrelated.

30.     On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

31.     Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Spin Master's enforcement

efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore bank accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Spin Master. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

32.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized PAW Patrol Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Spin Master, have jointly and severally, knowingly and willfully used and continue to use the PAW PATROL Trademarks and PAW Patrol Copyrighted Designs in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized PAW Patrol Products into the United States and Illinois over the Internet.

33.     Defendants' unauthorized use of the PAW PATROL Trademarks in connection with the advertising, distribution, offering for sale, and sale of Unauthorized PAW Patrol Products, including the sale of Unauthorized PAW Patrol Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Spin Master.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

34.     Spin Master hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

35.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered the PAW PATROL Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  The PAW PATROL Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from PAW Patrol Products offered, sold or marketed under the PAW PATROL Trademarks.

36.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the PAW PATROL Trademarks without Spin Master's permission.

37.     Spin Master is the exclusive owner of the PAW PATROL Trademarks.  Spin Master's United States Registrations for the PAW PATROL Trademarks (Exhibit 1) are in full force and effect.  On information and belief, Defendants have knowledge of Spin Master's rights in the PAW PATROL Trademarks, and are willfully infringing and intentionally using counterfeit versions of the PAW PATROL Trademarks.  Defendants' willful, intentional and unauthorized use of the PAW PATROL Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Unauthorized PAW Patrol Products among the general public.

38.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

39.     Spin Master has no adequate remedy at law, and if Defendants' actions are not enjoined, Spin Master will continue to suffer irreparable harm to its reputation and the goodwill of the PAW PATROL Trademarks.

40.     The injuries and damages sustained by Spin Master have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Unauthorized PAW Patrol Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

41.     Spin Master hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

42.     Defendants' promotion, marketing, offering for sale, and sale of Unauthorized PAW Patrol Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Spin Master or the origin, sponsorship, or approval of Defendants' Unauthorized PAW Patrol Products by Spin Master.

43.     By using the PAW PATROL Trademarks in connection with the Unauthorized PAW Patrol Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized PAW Patrol Products.

44.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized PAW Patrol Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

45.     Spin Master has no adequate remedy at law and, if Defendants' actions are not enjoined, Spin Master will continue to suffer irreparable harm to its reputation and the goodwill of the PAW Patrol brand.

## COUNT III
## COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT REGISTRATIONS (17 U.S.C. §§ 106 AND 501)

46.     Spin Master hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

47.     Spin Master is the owner of valid and enforceable PAW Patrol Copyrighted Designs, which contain certain copyrightable subject matter under 17 U.S.C. §§ 101, *et seq*.

48.     Spin Master has complied with the registration requirements of 17 U.S.C. § 411(a) for the PAW Patrol Copyrighted Designs and has obtained Copyright Registration Nos. VA 1-967-964, VAu 1-217-618, VA 1-967-980, VA 1-912-869, VA 1-999-428, VAu 1-294-879, VA 1-967-970, VA 1-968-054, VA 1-967-973, VA 1-967-971, VA 1-968-053.

49.     Defendants do not have any ownership interest in the PAW Patrol Copyrighted Designs.  Defendants had access to the PAW Patrol Copyrighted Designs via the internet.

50.     Without authorization from Spin Master, or any right under the law, Defendants have deliberately copied, displayed, distributed, reproduced and/or made derivative works incorporating the PAW Patrol Copyrighted Designs on the Defendant Internet Stores and the corresponding Unauthorized PAW Patrol Products.  Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of the PAW Patrol Copyrighted Designs.  Such conduct infringes and continues to infringe the PAW Patrol Copyrighted Designs in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)–(3), (5).

51.     Defendants reap the benefits of the unauthorized copying and distribution of the PAW Patrol Copyrighted Designs in the form of revenue and other profits that are driven by the sale of Unauthorized PAW Patrol Products.

52.     The Defendants have unlawfully appropriated Spin Master's protectable expression by taking material of substance and value and creating Unauthorized PAW Patrol Products that capture the total concept and feel of the PAW Patrol Copyrighted Designs.

53.     On information and belief, the Defendants' infringement has been willful, intentional, and purposeful, and in disregard of and with indifference to Spin Master's rights.

54.     The Defendants, by their actions, have damaged Spin Master in an amount to be determined at trial.

55.     Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Spin Master great and irreparable injury that cannot fully be compensated or measured in money. Spin Master has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Spin Master is entitled to a preliminary and permanent injunction prohibiting further infringement of the PAW Patrol Copyrighted Designs.

## PRAYER FOR RELIEF

WHEREFORE, Spin Master prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the PAW PATROL Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine PAW Patrol Product or is not authorized by Spin Master to be sold in connection with the PAW PATROL Trademarks;

b. reproducing, distributing copies of, making derivative works of, or publicly displaying the PAW Patrol Copyrighted Designs in any manner without the express authorization of Spin Master;

c. passing off, inducing, or enabling others to sell or pass off any product as a genuine PAW Patrol Product or any other product produced by Spin Master, that is not Spin Master's or not produced under the authorization, control, or supervision of Spin Master and approved by Spin Master for sale under the PAW PATROL Trademarks and/or the PAW Patrol Copyrighted Designs;

d. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized PAW Patrol Products are those sold under the authorization, control or supervision of Spin Master, or are sponsored by, approved by, or otherwise connected with Spin Master;

e. further infringing the PAW PATROL Trademarks and/or the PAW Patrol Copyrighted Designs and damaging Spin Master's goodwill; and

f. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Spin Master, nor authorized by Spin Master to be sold or offered for sale, and which bear any of Spin Master's trademarks, including the PAW PATROL Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof and/or which bear the PAW Patrol Copyrighted Designs;

2) Entry of an Order that, upon Spin Master's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress,

Alibaba, Amazon, Wish.com, and Dhgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the PAW PATROL Trademarks and/or which bear the PAW Patrol Copyrighted Designs;

3) That Defendants account for and pay to Spin Master all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the PAW PATROL Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Spin Master be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the PAW PATROL Trademarks;

5) As a direct and proximate result of Defendants' infringement of the PAW Patrol Copyrighted Designs, Spin Master is entitled to damages as well as Defendants' profits, pursuant to 17 U.S.C. § 504(b);

6) Alternatively, and at Spin Master's election prior to any final judgment being entered, Spin Master is entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

7) Spin Master is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505 and 17 U.S.C. § 1117(a); and

8) Award any and all other relief that this Court deems just and proper.

Dated this 19th day of October 2020.        Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Christopher S. Hermanson
Jake M. Christensen
Isaku M. Begert
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
chermanson@gbc.law
jchristensen@gbc.law
ibegert@gbc.law

*Counsel for Plaintiffs*
*Spin Master Ltd. and Spin Master, Inc.*